No. 21,147.

CELINA LASNIER, *Appellee*, V. LAURA BERTHIAUME et al.
(HELEN MARTIN et al., *Appellants*).

SYLLABUS BY THE COURT.

1. APPEAL—*No Transcript of Evidence—Scope of Review.* Failure to provide a transcript of the evidence does not necessarily require the dismissal of an appeal; it merely excludes from the scope of the review those features of the lawsuit dependent thereon.

2. WILLS—*Rule against Perpetuities.* The rule against perpetuities is that no future interest in property can lawfully be created which does not necessarily vest within twenty-one years after some life or lives presently in being, excluding from such computation of years the incipient life of infants *in ventre 'sa mere.*

3. SAME. Provisions of a will which direct that no disposition of certain property shall be made "within twenty-one years after the death of my beloved wife" are void under the rule against perpetuities.

4. SAME—*Offends Rule against Perpetuities—Descent of Estate.* When a future estate, attempted to be created by a will, fails because it offends the rule against perpetuities, the property thus ineffectually disposed of vests at once in the heir or heirs at law; and a rent charge on the abortive future estate during the illegal interim of suspension fails therewith.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed March 9, 1918. Affirmed.

*C. L. Kagey,* of Beloit, *M. V. B. Van De Mark,* and *A. M. French,* both of Concordia, for the appellants; *Fred W. Sturges, jr.,* of Concordia, guardian *ad litem* for minor appellants.

*Park B. Pulsifier, C. L. Hunt,* both of Concordia, and *W. H. Savary,* of Chicago, Ill., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by the plaintiff, Celina Lasnier, widow and sole heir at law of the late Alfred Edmond Lasnier of Cloud county, to quiet her title to certain property which had belonged to her deceased husband. Alfred Edmond Lasnier left a will, the material parts of which read—

"First, I bequeath to my wife, Celina Lasnier all the income, real estate and personal property that I own, as long as she lives a widow. If she remarries she will have right to what the law allow her only.

"Second, I oblige her after receiving my life insurance, which is in her name, to pay $500 to the parish of Concordia for masses to be said for me to the above amount, within a year after my death.

"Third, I oblige her to give $500.00 to my sister, Emeline Lasnier, Sister in the Convent of Presentation of Marie, in St. Hyacinthe, Canada, under the name of Sister Theresa.

"Fourth, I devise [advise] her to sell the farm and all of the stock and implements, but I desire that the store shall not be disposed of in any manner within 21 years after the death of my beloved wife. And in the meantime during the 21 years, the building to be kept in repair out of the income of same building and the balance to be equally divided amongst my brothers and sisters.

"Fifth, after 21 years elapse after the death of my beloved wife, should the building be sold the amount to be divided amongst and between the children of my brothers and sisters that have remained good Catholics and good citizens.

"I appoint my beloved wife, Celina Lasnier, the executrix of this my last will and testament."

The plaintiff elected to take under the law, and not under the will. As executrix she paid the bequests mentioned in the second and third paragraphs of the will, and brought this action against all the next of kin of her husband who might have some claim of right under the fourth and fifth clauses of his will, basing her action on the ground that those clauses of the will were void, and that there was a partial intestacy of her husband's estate which devolved upon her as his sole heir at law.

The trial court gave judgment for plaintiff on the ground—

"That the will of Alfred Edmond Lasnier as to the fourth and fifth clauses thereof is void and of no effect because of ambiguity, uncertainty, and remoteness, and also because of the reason that the said clauses violate the rule against perpetuity."

Certain of the defendants appeal.

The appellee raises a preliminary question by moving to dismiss this appeal because no transcript of the evidence was provided by the appellants. But, unless the questions involved in the appeal require a review of the evidence or of the rulings of the court thereon, a transcript would serve no purpose. Failure to provide a transcript does not necessarily require the dismissal of an appeal; it merely excludes from the scope of the review those features of the lawsuit dependent thereon. In this case, apparently, there was some evidence introduced at

the trial, but we do not discern its relevancy to the matters now urged upon our attention.

Were the fourth and fifth clauses of the will void, as decided by the trial court? Let us test them by the rule against perpetuities. That rule is that no future interest in property can lawfully be created which does not necessarily vest *within* twenty-one years after some life or lives now in being, excluding from such computation of years the incipient life of infants *in ventre sa mere*.

In *Klingman v. Gilbert*, 90 Kan. 545, 135 Pac. 682, it was said:

"If by the terms of the will no estate could vest in the children of either son who died leaving a widow until her death or remarriage, the rule against perpetuities was violated, because it might happen that the son would marry a woman born after his father's death, who would survive him more than twenty-one years. The improbability of such an occurrence does not affect the matter. 'The rule requires that future interests within its scope should vest within twenty-one years, exclusive of periods of gestation, after a life or lives in being. . . . It is not enough that the future interest may, or even that it will, in all probability, vest within the limits. It must necessarily so vest.' (30 Cyc. 1482, 1483.) If, however, an estate would necessarily vest in such children at or before the death of their father, the rule was satisfied, no matter how long their possession and enjoyment of the property might be postponed. (30 Cyc. 1471, 1473; 22 A. & E. Encycl. of L. 721, 722; *Gates v. Seibert*, 157 Mo. 254, 57 S. W. 1065, a case somewhat like the present; Note, 49 Am. St. Rep. 126.) The question for determination therefore is, When would an estate vest in the children of one of the sons under the circumstances stated? If the actual and obvious purpose of the testator was one which the law does not permit to be carried out, the provision of the will must fail." (p. 548.)

In *Keeler v. Lauer*, 73 Kan. 388, 393, 85 Pac. 541, it was said:

"The trust is to terminate and the property to pass to the children when the youngest child arrives at the age of twenty-one years. Having no statute on the subject the common-law rule prevails, under which the contingent interest must become vested within a life or lives in being and twenty-one years afterward, to which, under some circumstances, is added the period of gestation. (22 A. & E. Encycl. of L. 708; Gray, Rule against Perpetuities, 2d ed., § 201.) If the contingency on which the estate is to vest must certainly happen within the common-law period, it does not offend the rule. As the minority of the youngest child comes within the gross period added to a life in being there is no room for disagreement. It is held, too, that the term of twenty-one years may be

taken in gross, without reference to infancy, and the devise is not too remote if the contingency must happen within that period. (*Barnitz's Lessee v. Robert Casey*, 11 U. S. 456, 468, 3 L. Ed. 403; *Potter v. Couch*, 141 U. S. 296, 314, 11 Sup. Ct. 1005, 35 L. Ed. 721; *Johnston's Estate*, *Johnston's Appeal*, 185 Pa. St. 179, 39 Atl. 879, 64 Am. St. Rep. 621; *Cadell v. Palmer*, 1 Cl. & F. [Eng.] 372; *Von Brockdorff v. Malcolm*, 30 Ch. Div. 172; Gray, Rule against Perpetuities, 2d ed., §§ 186, 223; 22 A. & E. Encycl. of L. 709.)" (p. 393.)

The rule against perpetuities has received the sanction of lawyers and statesmen for many generations, both in America and England; and it is grounded on the salutary and far-sighted public policy which frowns on the total exclusion of property from social commerce for long periods of time. Such exclusion is at variance with that philosophy of government, which encourages the accumulation of private property in such form that it may readily be used or disposed of to provide against the possibilities of future want or misfortune. Chancellor Kent's examination of the early English cases led him to say that perpetuities had led to confusion and disorder and had often caused the entanglement and ruin of families. (4 Kent's Commentaries, 267, 268.) Professor Gray declares that the rule is not of feudal origin, but has its support in the practical needs of modern times. (Gray, The Rule against Perpetuities, § 203.)

Sir William Blackstone, in discussing the rule against perpetuities, says:

"But, in . . . these species of executory devises, the contingencies ought to be such as may happen within a reasonable time; as within one or more life or lives in being, or within a moderate term of years, for courts of justice will not indulge even wills, so as to create a perpetuity, which the law abhors; because by perpetuities . . . estates are made incapable of answering those ends of social commerce, and providing for the sudden contingencies of private life, for which property was at first established. The utmost length that has been hitherto allowed for the contingency of an executory devise of either kind to happen in, is that of a life or lives in being, and one and twenty years afterwards." (Cooley's Blackstone, Book II, 173, 174.)

In the present case, the plaintiff, as was her privilege, disclaimed under the will and claimed her right to half the estate under the statute. What then became of the other half of the estate after paying the specific bequests? The will says the store building is not to be disposed of in any manner within

twenty-one years after plaintiff's death. After that time it is to vest, or the proceeds of it are to vest, in certain persons whose identity need not at this point concern us. It is not within twenty-one years after some life now in being, but after that time—beyond that time—that the proceeds of this property are to vest according to this will. Certainly this provision of the will offends the rule against perpetuities. And when a proposed future estate fails because of the rule against perpetuities, the property vests at once in the heir or heirs at law. (*In re Walkerly*, 108 Cal. 627, 49 Am. St. Rep. 97, and note; *Kountz's Estate*, 213 Pa. St. 390, 3 L. R. A., n. s., 639; Cooley's Blackstone, Book II, 156, 157; Gray, The Rule against Perpetuities, §§ 247, 248.) The rent charge on the property, being for the proposed illegal term of suspension or postponement of the vesting of the estate, necessarily fails with the failure of the abortive estate itself.

In view of the foregoing, it seems wholly unnecessary to decide whether the provisions of the will creating a future estate to vest finally in such of the testator's kinsmen as had "remained good Catholics and good citizens," without prescribing a mode of determining these requisite qualifications of beneficiaries to take under the will, are void for uncertainty. If the will had created and bestowed a power of appointment, or if it had prescribed some other definite and suitable mode of determining who among the testator's nephews and nieces possessed the requisite qualifications, there might be no such uncertainty as would vitiate the devise or bequest. (40 Cyc. 1708.)

It is suggested in appellants' brief that the store building did not amount to one-half of the testator's property. Probably so, but aside from the building the will does not attempt to regulate the disposition of any residue. The testator advised his widow to sell the farm, etc., but failed to direct a disposition of the proceeds of such sale. There, too, the will discloses a partial intestacy. All the property ineffectually disposed of by the will devolved on the plaintiff as sole heir at law.

The judgment is affirmed.