No. 24,098.

LAURA BUCKWALTER, *Appellant,* v. W. S. HENRION et al., *Appellees.*

No. 24,130.

W. B. BAILEY AND CELESTIA A. BAILEY, *Appellants,* v. W. S. HENRION et al., *Appellees.*

SYLLABUS BY THE COURT.

1. APPEAL—*Defective Abstract of Record—Motion to Dismiss Appeal.* The want of a transcript of the evidence and a consequent defective abstract, and the want of an abstract of the pleadings, do not necessarily require the dismissal of an appeal; such defects merely restrict the scope of the appellate review.

2. SAME—*Absence of Transcript—Presumptions as to Findings of Court.* Where there is no transcript and the accuracy of appellants' statement of the evidence is disputed by the appellees, the supreme court must assume that the trial court's findings of fact are correct and that they were supported by the evidence.

3. STREET IMPROVEMENTS—*Publication of Ordinances and Resolutions.* Under the trial court's findings of fact, the ordinances and resolutions relating to the special improvements in controversy were lawfully published.

4. SAME—*Charge of Fraud—Findings.* All controversy concerning alleged fraud of city officials and private contractors is terminated when the trial court finds that there was no fraud, and when the evidence to support such allegations of fraud is not submitted for appellate review.

5. SAME—*Findings of Trial Court.* When the evidence has not been preserved, an assignment of error based upon the trial court's refusal to make requested findings of fact cannot be reviewed.

6. SAME—*Incidental Expenses.* A reasonable sum to cover items of incidental expenses necessarily incurred in constructing special improvements may lawfully be included in the cost thereof — following *Bailey v. City of Wichita,* 108 Kan. 282, 284, 194 Pac. 928.

7. SAME—*Apportionment of Costs Assessed Against Abutting Property Owners.* Where the cost of special improvements on city streets is fairly apportioned and fairly assessed against the abutting properties benefited thereby, in compliance with a statute fairly designed to render approximate justice to the property owners concerned, there is no confiscation nor other breach of constitutional law, although the assessments in some instances may aggregate more than the current market value of the properties taxed therefor.

Appeals from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed July 8, 1922. Affirmed.

*W. B. Bailey,* of Wichita, *R. B. Smith,* and *C. M. Brobst,* both of Chanute, for the appellants.

*Robert C. Foulston, George Siefkin,* and *James A. Conly,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: These were taxpayers' suits to enjoin the officers of the city of Wichita from making assessments on plaintiffs' properties to pay for special improvements.

The defendants move to dismiss because the abstracts are defective. They do not contain the pleadings nor any abridgment of the pleadings. No transcript of the evidence was provided, and the evidence set out is merely statements from the *memory* of counsel who participated in the trial; and the accuracy of these statements is challenged.

However, the want of a transcript and consequent want of an abstract of the evidence do not always require a dismissal; the want of these merely limits the scope of the appellate review. (*Lasnier v. Martin,* 102 Kan. 551, 171 Pac. 645.) Here the appellants set out the trial court's findings of fact. Now if the appellants conceded the correctness of these findings and could show that a different judgment should have been entered thereon, we would have something to review which would render the want of the pleadings, want of a transcript, and want of an abstract or defective abstract immaterial. But we find no such error specified, and while we are reluctant to allow the motion to dismiss, it is diffi-

cult to get a hold of something which we can properly discuss and review.

These appellant taxpayers should be advised that the supreme court must assume that the trial court's findings of fact are correct, when there is some substantial evidence to support them. (*Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057.) What was said in *Bailey v. City of Wichita,* 108 Kan. 282, 285, 194 Pac. 928, concerning the *"Daily Record"* was based upon the assumption that its insufficiency as a newspaper was not in dispute (108 Kan. 854), but here the trial court's finding clears up its status:

### Finding of Fact No. 28.

"All ordinances, resolutions, proceedings, etc., in relation to this pavement were printed in The Daily Record.

"The Daily Record is published every day except Sunday and printed in the City of Wichita. . . .

"The City of Wichita advertised for bids in 1917 for an official paper in which to publish the ordinances and other proceedings which the City was required to publish. The Daily Record was the only paper which bid. The other papers failed to put in any bid, and The Daily Record was thereupon designated by the Board of Commissioners of the City of Wichita as the official paper of the City of Wichita and since said time has continued to be the official paper of the City of Wichita.

"In 1915, Judge Thomas C. Wilson, Judge of Division Number One of the District Court of Sedgwick County, Kansas, designated The Wichita Law & Mercantile Report, the predecessor of The Daily Record, as the official paper for District Court publications.

"The Daily Record was established in 1888 as The Wichita Law & Mercantile Report. The name was changed to The Daily Legal News in 1916 and to The Daily Record a few months later."

### Conclusion of Law, No. 6.

"Under Section 1411 of the General Statutes of 1915, the newspaper in which the ordinances of the City of Wichita are required to be published need not be a newspaper of general circulation in the City of Wichita or Sedgwick County, Kansas. The Daily Record is a proper paper in which to publish the ordinances and resolutions."

(See, also, Gen. Stat. 1915, §§ 1412, 6001, 6002; *Kansas City v. Overton,* 68 Kan. 560, 75 Pac. 549.)

The next topic discussed in the Buckwalter brief relates to alleged fraud and dishonesty on the part of certain contractors and city officials in the letting and division of the concrete work and asphaltic work of the special improvements. But the trial court's finding recites:

"46. There was no fraud, conspiracy, connivance, oppression or dishonesty

on the part of any of the officers, agents or employees of the City of Wichita in the letting of the contract for or in the construction of the Larimer Avenue improvement and the officials and employees of the City of Wichita in constructing said improvement acted in good faith."

That finding closes all controversy on this point. (*Bayer v. Cockerill*, 3 Kan. 282, syl. ¶ 6; *Farney v. Hauser*, 109 Kan. 75, syl. ¶ 7, 198 Pac. 178.)

In the Bailey case, No. 24,130, where the defective appeal similarly limits our opportunity for reviewing the matters complained of, we note a complaint because of the trial court's refusal to make certain requested findings of fact, but as we do not know what the issues were and there is no transcript of the evidence, nor unchallenged abstract of its contents, we cannot say whether such findings were material to a correct determination of the cause, nor whether the evidence would have justified such findings.

Fault is found with the items charged for "overhead," or incidental expenses. We cannot say that these are unreasonable, and it has already been decided that a reasonable charge for such necessary expenditures can properly be included in the cost of the improvement. (*Bailey v. City of Wichita*, supra.)

Among the many grievances urged by plaintiffs in case No. 24,130, there is one which is worthy of particular attention. Certain lots of plaintiffs were subjected to special assessments for these improvements which aggregated more than the market value of the property.

The trial court's finding No. 26, abridged, shows:

LOT "RESERVE C."

| | |
|---|---|
| Assessed value | $1,200.00 |
| Market value | 800.00 |
| Total of special assessments | 1,197.73 |

LOT "99."

| | |
|---|---|
| Assessed value | $390.00 |
| Market value | 300.00 |
| Total of special assessments | 368.17 |

But the trial court also found:

"The evidence does not show that the valuation placed by the appraisers on Reserve 'C' and Lot 99 were out of proportion to the valuation placed upon the other lots which were assessed for the Central Avenue improvement. The presumption, therefore, is that the appraised values of all the property charged with that improvement were uniform. The owners of said property objected to the assessments against it at the time fixed for complaints by the board of commissioners, on the ground that the assessment would confiscate

it but the objection was overruled by the board of commissioners. With the assessments against said property unpaid, it is practically worthless. This property could not be sold for as much immediately after the pavement was completed as it could have been sold for before the pavement was ordered constructed."

This discloses a serious predicament for these lot owners and tax-payers. But while such a result is to be avoided by city officials wherever possible, and if such result can be traced to their willful injustice, oppression, or sheer disregard of property rights, the strong hand of a court of equity would promptly reach out and set it at naught, and do it, too, with more concern for righteousness than for logic (*Norwood v. Baker*, 172 U. S. 269, and Rose's Notes thereto in 43 L. Ed. 443 *et seq.*; 28 Cyc. 1161), yet where the special assessments are fairly made, and made according to equitable principles, and pursuant to statutory authority, the fact that the proportionate cost of the improvement is greater than the property will readily sell for on the current market does not make a case for the interference of a court of equity. In *Louisville & N. R. R. Co. v. Barber Asphalt Co.*, 197 U. S. 430, 49 L. Ed. 819, the supreme court said:

"There is a look of logic when it is said that special assessments are founded on special benefits, and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land—indeed, whether it is a benefit at all—is a matter of forecast and estimate. In its general aspects, at least, it is peculiarly a thing to be decided by those who make the law. . . .

"A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account. If that possibility does not invalidate the act, it would be surprising if the corresponding fact should invalidate an assessment. Upholding the act as embodying a principle generally fair and doing as nearly equal justice as can be expected seems to import that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things." (pp. 821, 822.)

And so here. There was nothing arbitrary, irregular, or unusual in the proceedings leading up to the construction of the special improvements for which these special assessments were levied; and

it cannot be said that the statute under which they were constructed is not fairly adapted to secure approximate justice, since it takes into account the proportionate frontage, area, location, and probable benefits to the various properties chargeable with the cost of the improvement.

A patient examination of the imperfect records presented in these cases discloses nothing which would justify our disturbance of the judgments, and they are therefore affirmed.