No. 26,233.

THE AMUSEMENT SYNDICATE COMPANY, and L. M. CRAWFORD,
*Appellants,* v. E. L. MARTLING et al., *Appellees.*

No. 26,234.

L. M. CRAWFORD, *Appellant,* v. E. L. MARTLING, *Appellee.*

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Abstract of Evidence—Limitation of Review.* Where
   the evidence on which the findings of a referee and the findings and judg-
   ment of the trial court were based has not been preserved, abstracted and
   presented to the supreme court, the scope of the appellate review is neces-
   sarily restricted to a consideration of matters properly disclosed by such
   limited record.

2. SAME—*Joinder of Lawsuits for Trial and Appeal.* Although lawsuits essentially
   different in their character may be tried and determined together to serve the
   convenience of court and litigants, the inherent differences in such actions
   must not be overlooked, nor the rights of litigants in the different actions
   confused because a personal litigant in one action happened to be the
   president of a corporation litigant in the other action.

3. COSTS—*Assessment.* In an action where a money judgment is properly
   decreed to a litigant, the costs of the litigation should follow the judgment
   and should not be assessed against the prevailing party. (R. S. 60-3704.)

4. APPEAL AND ERROR—*Interest—Limited Record.* Error assigned on a denial
   of an allowance of interest considered, and held that the limited record
   prevents its review.

5. PARTNERSHIP—*Dissolution—Property Subject to Sale.* Error assigned on
   order to sell the appellant corporation's property, under circumstances stated
   in the opinion, considered and sustained, and the order set aside.

6. SAME—*Property Subject to Receivership.* Error assigned on trial court's
   refusal to discontinue a receivership over appellant's undivided interest in
   property otherwise properly subjected to receivership, considered and not
   sustained.

7. APPEAL AND ERROR—*Omission in Record—Limited Review.* Other errors,
   based on findings presumably supported by evidence not presented on ap-
   peal, considered, and held not reviewable because of limited record.

8. PARTNERSHIP—*Dissolution and Accounting—Costs.* In an action to dis-
   solve a partnership and for an accounting, the costs of the action, including
   costs of a receivership to conduct and wind up the partnership business,
   may be apportioned and taxed to the litigants as may seem equitable in the
   sound discretion of the trial court, under specific authority of statute.
   (R. S. 60-3706.)

9. APPEAL AND ERROR—*Omissions in Record—Limited Review.* Error assigned
   in cross appeal noted and not sustained because of limited record presented
   for review.

10. PARTNERSHIP—*Sale of Property—Taxation of Costs.* Judgments modified, and order of sale of property set aside; sale of defendant's undivided half interest in property directed to satisfy the lessor-vendor's lien thereon, with instructions touching taxation of costs.

Appeals from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed April 11, 1925. Modified.

*B. F. Hegler, A. V. Roberts,* both of Wichita, and *W. R. Hazen,* of Topeka, for the appellants.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glen Porter,* and *O. H. Bentley,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: These two actions grew out of certain business relationships of the litigants in the operation of a billposting plant.

On August 24, 1911, the Amusement Syndicate Company, which owned a billposting plant and advertising franchise pertaining thereto in Wichita, made a written lease of a one-half interest in the plant to E. L. Martling for a term of five years, upon a rental to be paid in specified monthly and annual amounts, with an added conditional grant that if Martling should make all the monthly and annual payments as provided by the contract the syndicate company would give him a bill of sale for such half interest in the billposting plant. The parties agreed that time was of the essence of the contract, but further agreed that in case of default of any payments not exceeding six months Martling should have the right to "revive and enforce" the contract by paying such defaulted payments with 10 per cent interest thereon.

Contemporaneous with the foregoing contract, the Amusement Syndicate Company leased the New Lyceum theater in Wichita to Martling and L. M. Crawford for one year; and Martling and Crawford, who were equal owners of the New Crawford Theater in Wichita, formed a partnership to operate these theaters and the billposting plant on an equal partnership basis, with a proviso that Martling should manage the business and receive a salary of $35 per week from the partnership. The partnership contract provided in detail how the business accounts should be kept and how its earnings and expenses should be handled.

Crawford was president of the Amusement Syndicate Company, as well as a partner of Martling.

The billboard monthly and annual rentals were not paid with any

regularity, and the handling of the partnership funds was conducted in slipshod fashion.

In time these incidents gave rise to two lawsuits:

On June 26, 1919, the Amusement Syndicate Company brought an action against Martling (case No. 26,233 herein), alleging breach of contract, default of payments, Martling's wrongful claim of ownership of the billposting plant, and prayed for a cancellation of the contract, a decree declaring plaintiff to be the absolute owner of the plant; and in the event a forfeiture of the contract was denied, that Martling be required to account for the proceeds of the billposting plant, and that the amount due plaintiff should be determined and that he have judgment therefor, and that the "undivided one-half interest of said E. L. Martling in said billposting plant and franchise  .  .  .  be sold and the proceeds arising therefrom be applied to the payment of  .  .  .  plaintiff's claim."

About the same time Crawford filed another action against Martling (case No. 26,234 herein), setting up the partnership contract of 1911, alleging various delinquencies on the part of Martling, his misuse and conversion of the partnership funds, sundry breaches of the partnership contract, and praying a dissolution of the partnership and for an accounting, and for the appointment of a receiver, and that the assets of the partnership be turned into cash, and for judgment against Martling for what was found to be due Crawford.

Martling's answers in both these actions contained general denials, and some other allegations not now necessary to repeat.

A receiver was appointed to take charge of the partnership assets and business concerns, but eventually one theater property was released from the receivership and the other theater had been burned, so the property under the custody and management of the receiver was the billposting plant, which included the advertising franchise and certain chattels and some real estate purchased by Martling with partnership funds.  This receiver was appointed at the instance of Crawford in the action to dissolve the partnership.

A referee was appointed in the partnership case to hear the evidence and to make an accounting and report.  That duty was performed, and a lengthy report, which included findings of fact and conclusions of law, was submitted, to which plaintiff filed certain exceptions; and subject to such exceptions, it was agreed that the referee's report and findings should constitute the evidence on which the case of the Amusement Syndicate Company and Martling should

be determined. The referee's report and findings and the trial court's findings and judgment pursuant thereto are too long for reproduction, but may be thus summarized:

The contracts of 1911 were executed as narrated above. Martling paid $1,070 on the rental contract, which should be considered as part payment for a half interest in the billposting plant, and that he owed the syndicate company a balance thereon of $5,430, together with interest thereon at 10 per cent from August 24, 1911, and this amount should be a lien on Martling's half interest in the plant. From May, 1918, Martling wrongfully excluded Crawford from his right as partner to control the billposting plant, and such wrongdoing justified the institution of this litigation, and Crawford's prayer for a dissolution of the partnership should be granted. Referee also noted that in winding up the partnership it would be advisable to sell the whole billposting plant, but an undivided half of it belonged to the Amusement Syndicate Company. Referee suggested that as the court had jurisdiction of the syndicate company in the other lawsuit, case No. 26,233 herein, a sale of the whole plant might be ordered in that action. Referee found that Martling had employed his son at $35 per week, plus $10 a week for the use of the son's automobile, and had awarded the son several hundred dollars additional for incidental services, all at the expense of the partnership; but for want of evidence on the part of plaintiff to show that such allowances to the son were excessive or fraudulent, no finding prejudicial to Martling was based thereon. The partners were indebted to the Amusement Syndicate Company for theater rent in the sum of $4,884, and that Crawford paid half of this sum, and Martling gave his note to the syndicate company for the other half of it, but had never paid any part of it, and the note was barred by the statute of limitations and should not be considered in the accounting. Referee found that while the expressed partnership agreement was only for one year, it was impliedly agreed to continue it; and while the billposting business had always been profitable, most of its proceeds had been put back into the property; and it was now worth about $30,000, its principal value inhering in the franchise which pertained to the plant. Under a claim of right based on unusual services, Martling for some indefinite time had taken $30 per week for his own use from the partnership business in addition to his agreed compensation of $35 per week, and later he took double the original agreed allowance,

$35 per week from the billposting part of the business and $35 a week from the theater. The referee found—

"Under the contract of partnership, he was to do [have] the management of the two theaters and billposting plant for $35 per week. The Lyceum theater was only operated about a year when it burned. However, we think there should be an allowance to defendant, E. L. Martling, to the amount of $20 per week for the space of four years, being the sum of $4,150, this allowance to be allowed him upon the unpaid sum for his one-half undivided interest in the Martling-Crawford billposting plant. The referee further finds that interest should not be allowed in this sum. The referee further finds that no evidence of any subsequent contract between the partners authorizing additional compensation. But he finds that same should be allowed."

Referee found that two audits of the business had been made by expert accountants, Montgomery & Company and Charles A. Smith & Company, and—

"Fourteenth. There was nothing of any consequence found to indicate, by the evidence or by the audits, that E. L. Martling, defendant, had appropriated money belonging to the partnership. The auditors report that the records were kept so inadequate that it would have been possible for defendant, E. L. Martling, to have misappropriated money. They and I have been unable to find if he did do this. It further appears that these records were in line with what the plaintiff, Mr. Crawford, desired, and I see no evidence that he desired any change in the system of bookkeeping, and further finds that he had the account gone over by his special auditor several times prior to 1918. The referee finds that up to 1918 the plaintiff and defendant were on very friendly terms one with the other, the defendant entertaining the plaintiff in his home, upon the visits of the plaintiff to this city to look after his interests; and the plaintiff seemed to have placed a great deal of confidence in the defendant. In Montgomery's report made in 1918 he advised the parties to install a better system of accounting. This does not seem to have been installed, as the same system is apparently followed, all as shown by the last audits, who also criticise the system of accounting. The plaintiff evidently has not been able to detect if there was any fraud of the defendant in keeping his accounts, as there seems to have none been offered in evidence. After 1918 the plaintiff was not able to have access to the books, and did not have any. There is evidence offered that a ledger containing the records in the Montgomery's time of audit, and also some twenty pages—that in the audit made under my direction the front twenty-some pages were cut out, but the referee is not able to draw conclusions from the saying that they were destroyed by the defendant in order to hide damaging evidence against said defendant. . . .

"It further appears to the referee that on account of unexpected services necessary in a required rebuilding of the plant, and because defendant for several years took only a part of his salary of $35 per week from the billboard partnership, should be allowed a credit upon his unpaid purchase price of the undivided one-half interest of the billboard plant, to the amount of $4,160, without interest. . . .

"That the partnership expended for 'repairs, erection and replacements of

billboards,' up to May 31, 1918—this being the period when the billboards were remade—the sum of $12,226, of which about three-fourths went into new boards; the remaking of the plant will operate to make. the billboard plant that much more valuable, and upon the sale of the same the partners will be reimbursed. Should the court determine in the case now pending, viz., *Amusement Syndicate Company v. Martling,* which is to extinguish any interest that Martling might claim in the billboard plant, that said Martling's interest should be extinguished, then in that case he should be allowed appropriate credit."

The trial court's judgment was mainly in accord with the findings and report of the referee, but the latter was not specifically adopted and approved *in toto.* Judgment was entered in favor of the Amusement Syndicate Company against Martling on the purchase price of a half interest in the billposting plant for $9,544.92, and interest thereon from date of judgment, January 5, 1925.

In the partnership case the court found that at the time of the rendition of its judgment the partnership had no property other than the interest of the parties in the billposting plant, and—

"Ordered, adjudged and decreed in each of said cases, that the receiver be and he is hereby ordered and directed to sell the entire property, to wit: The entire billposting plant mentioned and described in suit, *Crawford v. Martling,* No. 40,773, and mentioned and described in suit of *The Amusement Syndicate Company v. Martling,* suit No. 47,066, and mentioned and described in the contract wherein the said Amusement Syndicate Company sold one-half of the said property to the said Martling."

The court ordered the proceeds of the sale of the entire billposting plant to be distributed as follows:

"1st. The costs of each of said above actions and the costs of the receiver and referee be paid.

"2d. That one-half of the balance of the purchase price to be paid to the Amusement Syndicate Company.

"3d. That from the other one-half of said purchase price there shall be paid to the Amusement Syndicate Company or L. M. Crawford, its president, the sum of nine thousand five hundred forty-four and 92/100 ($9,544.92) dollars, together with interest thereon from this date at the rate of ten per cent per annum, and that the balance of the purchase price, if any, be paid to E. L. Martling."

The Amusement Syndicate Company assigns error—

"(a) In denying the plaintiff interest on the alleged purchase price of the poster plant from January 15, 1922, the date the receivership was extended over the billposter plant, to the date of the judgment. .

"(b) In ordering the entire billposter plant sold by the receiver.

"(c) In rendering judgment that the proceeds from the sale of the billposter plant be applied to the payment of all costs herein and all costs and receiver's expenses in the case of *Crawford v. Martling,* No. 40,773.

"(*d*) In rendering judgment that the plaintiff below should pay one-half the costs.

"(*e*) In denying the application to discontinue the receivership over the plaintiff's undivided half of said billposter plant after all interest in or right to the operation of said billposter plant had been extinguished by the judgment of the court dissolving said partnership in case No. 40,773, *L. M. Crawford v. E. L. Martling.*"

In the partnership case, L. M. Crawford assigns various errors, which his counsel have summarized for review thus:

"(*a*) The allowance to E. L. Martling of a large amount for his services over the amount provided for in the partnership contract.

"(*b*) Allowing appellee any compensation after he wrongfully and unlawfully took possession of the partnership property and excluded his partner from any participation therein.

"(*c*) Allowing E. L. Martling, Jr., son of appellee, over $5,000 as assistant manager, about $1,600 for the rent of his car, $568.28 as commission, $690.52 for 'incidental expenses,' and $1.50 to $2 per night for looking after the ushers and doorkeepers at the theater.

"(*d*) The decision of the court that the promissory note of $2,442, payable on demand, was barred by the statute of limitations. This note had been given as evidence of appellee's one-half of the unpaid rent for the Lyceum theater at the time it burned.

"(*e*) The judgment that appellant should pay one-half of the costs and expenses of the receivership in this action."

Before considering these assigned errors in detail it must be noted that the evidence on which the referee's findings and the findings and judgment of the trial court were based is not presented to this court, so it must be assumed that there was competent testimony to support all the findings of fact, and our review will necessarily be restricted to a consideration of such matters as are shown by the limited record before us. (*Buckwalter v. Henrion,* 111 Kan. 781, 208 Pac. 645; *King v. Stephens,* 113 Kan. 558, 560, 215 Pac. 311.)

And at the outset it will be well to keep in mind that although these lawsuits were largely considered and tried together, they were nevertheless essentially two different lawsuits. The Amusement Syndicate Company was a duly incorporated legal entity, having rights which it was entitled to vindicate in court irrespective of the fact that its president, L. M. Crawford, was a partner of Martling and was plaintiff in another lawsuit and had his own grievances against Martling growing out of that partnership.

The Amusement Syndicate Company in its lawsuit herein sought to cancel its contract of 1911, or at least to secure an accounting of the sums due it under that contract. The plaintiff company sub-

stantially prevailed. It was given judgment against Martling for
$9,544.92 and interest thereon from January 5, 1925. Having pre-
vailed, the costs should have followed the judgment as a matter of
course. (R. S. 60-3705.)

Touching the syndicate company's complaint because interest was
denied it on the purchase price from January 15, 1922, until January
5, 1925, it seems impossible for this court to take hold of that point.
We cannot tell from the record that any such deduction was made.
We have no reason to doubt the assertion of counsel that such was
the fact, but the referee's findings or those of the trial court do not
disclose it, and the trial court's computations, on which judgment
for $9,544.92 in favor of the syndicate company was based, are not
in shape for review, so this assigned error cannot be sustained.

The syndicate company's main grievance, however, has to do with
the order to sell the entire billposter plant, and that point seems
to be well taken. Why should the appellant's half of this valuable
property be sold? What wrong, fault or delinquency did the syndi-
cate company commit which would justify an *in invitum* sale of its
property? We discern none. It is argued that the property will
sell to greater advantage if sold altogether. Perhaps so; but that
is not a sufficient excuse for forcing a sale of property of which the
syndicate company is the sole owner and over which no other party
to this lawsuit has a shadow of a claim. The parties themselves
in 1911 considered it practicable to provide for a conditional sale
of an undivided half interest in the property, and it is none the less
so now. By a very generous construction of the contract of 1911,
and notwithstanding Martling's protracted defaults in payment of
rentals, the trial court found that he should be dealt with as owner
of an undivided half interest in the plant, subject to appellant's
lien for the balance due thereon. It was therefore quite proper to
order a sale of Martling's half interest in the property he has never
paid for, so that what he owes thereon may yet be paid. It is beside
the point to cite authorities holding that in actions for the dissolu-
tion of partnerships all the partnership assets should be sold and the
proceeds distributed unless the partners by lawful agreement assent
to a division of the partnership property. Here the partnership did
not own any part of the plant. The syndicate company owned half
and Martling conditionally owned the other half, subject to the
syndicate company's right to compensation therefor. The partner-
ship never had any right to the plant except the use of it during the

life of the- partnership. It was error to order a sale of appellant's undivided half of the property.

Since the receivership expenses were incurred in the partnership case, and not in the Amusement Syndicate Company's case, it was error to charge these expenses to the latter. Being incurred in the case of *Crawford v. Martling,* No. 26,234, they should have been taxed therein.

Error is also assigned because the trial court denied the syndicate company's application to discontinue the receivership over the appellant's undivided half of the billposter plant. From the nature of the case it was necessary to deny that motion. The syndicate company had given a lease of an undivided half interest in the plant to Martling, with a stipulation that such lease might ripen into a sale, and in so doing the syndicate company must be held to have contemplated the consequences of such a lease. The plant had to be operated as a unit, and it was so operated without appellant's objection for years, and whoever did operate it, whether as lessee or as conditional purchaser or as receiver, necessarily had to operate it as a unit. Indeed, the syndicate company signed the partnership agreement of Crawford and Martling for no other apparent reason than to admit its knowledge of and acquiescence in the use of the entire billposting property by the partnership. So long as the receiver was properly kept in charge of the partnership business, his retention of control of the whole billposting plant was proper. The denial of appellant's application was not error.

It follows, however, that the judgment in case No. 25,233 must be substantially modified as outlined above, and the cause will be remanded with instructions to set aside its order for the sale of the entire billposting plant and franchise, and in lieu thereof that an order be entered for the sale of the undivided one-half of such plant decreed to belong to defendant Martling, the proceeds to be applied to satisfy the unpaid lease-and-purchase price thereof, $9,544.92, due the appellant syndicate company in accordance with the judgment entered in its behalf, and that the costs be taxed to the defendant E. L. Martling.

Turning next to the appeal in the partnership case, No.·26,234 herein, a mere statement of appellant's grievances, as above, suggests the difficulty, if not the impossibility, of disturbing the more complicated features of this judgment, when we have no record here

except the pleadings, the referee's findings, and the judgment of the court. How could this court judicially declare that the allowances to Martling over and above his agreed stipulation of $35 per week were erroneous? The referee found that there were circumstances which warranted an extra allowance to him. We are bound to assume that there was evidence to justify that finding. The same observation holds true touching Martling's allowance of compensation after he excluded his partner, and the allowances to Martling's son. It would serve no purpose to intimate that these allowances look like high-handed conduct on Martling's part to milk the property so that there would be nothing to divide with Crawford. Handicapped as Crawford was by the irregular business methods of his partner, he was unable to show that these disbursements of the partnership funds were improper, and of course the trial court could not make a judicial allowance in his favor for a definite sum on mere suspicion of Martling's misappropriation or misuse of partnership funds.

Touching the error assigned in the trial court's ruling that Martling's promissory note for $2,442, payable on demand, was barred by the statute of limitations, it does not appear how that matter concerns Crawford. The note was given to the Amusement Syndicate Company as payee. If the note ever became the property of Crawford the record does not disclose the fact; and if Crawford did acquire it, it does not appear how it could be included in a matter of accounting between the partners.

Touching the error assigned on the division of costs, it must be borne in mind that this case was one of an equitable character, where the trial court has a wide discretion in apportioning the costs. (R. S. 60-3706; *Singer v. Taylor,* 91 Kan. 190, syl. ¶ 1, 137 Pac. 931.) While Martling's wrongful exclusion of Crawford brought about the receivership, yet the receiver was appointed at the instance of Crawford, and it does not seem inequitable that the costs should be apportioned between the litigants, more especially since the receivership was a business and financial success and paid its own way. So long as the costs in this case are not confused with the costs in case No. 26,233, the exercise of the trial court's discretion in apportioning them will not be disturbed.

No plain, palpable error in the judgment in the case of *Crawford v. Martling,* No. 26,234 herein, can be discerned except as it is neces-

sarily affected by the modification of the judgment ordered in the case of *Amusement Syndicate Company v. Martling,* No. 26,234 herein. Since the partnership did not own the billposting plant, and had no interest in that plant except the use of it during the existence of the partnership now terminated, the judgment in the partnership case must be modified so as to eliminate the order to sell the billposting plant, and to eliminate that portion of the order which confuses the taxation of costs in this action with the taxation of costs in case No. 26,233.

A matter in the nature of a cross appeal is presented in behalf of Martling. While not quite clear, it seems to relate to the trial court's refusal to allow Martling interest on certain moneys put back into the plant to improve the property, which moneys he might have used to apply on his rent-and-purchase contract of 1911. This court discerns no place to lay hold of this point. It is buried out of sight along with the rest of the evidence on which the referee's findings were based, and it is now impossible to review it.

From what has already been said, it is clear that both judgments are in need of modification; and the causes are therefore remanded to the district court with instructions to set aside its order for the sale of the entire billposting plant and franchise, and in lieu thereof to order a sale of the undivided half interest in said plant decreed to belong to Martling, and to apply the proceeds in satisfaction of defendant Martling's judgment liability to appellant in case No. 26,233 for $9,544.92 and interest and costs of suit, and that the costs properly chargeable to case No. 26,233 be taxed against defendant E. L. Martling; and that the judgment in the partnership case be modified so as to eliminate altogether the order to sell the billposting property pursuant to any judgment in case No. 26,234.

It is so ordered.