No. 28,198.

Myrtle M. Richards, as Administratrix, etc., *Appellee,* v. The Kansas Electric Power Company, *Appellant.*

(268 Pac. 847.)

Opinion filed July 7, 1928.

*Raymond F. Rice,* of Lawrence, *Gilbert H. Frith,* of Emporia, *Fred S. Jackson, James E. Smith,* both of Topeka, and *Thomas C. Forbes,* of Eureka, for the appellant.

*W. L. Huggins* and *O. T. Atherton,* both of Emporia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action in behalf of a widow and four children against a power company for the death of the husband and father of the bereaved family.

Briefly the facts were these: Charles Elliott Richards resided with his family on a farm near Madison. His house was wired for electricity supplied by this defendant. In August, 1924, Richards planned to raise his house and set it back a short distance and build a new residence on the site. He requested defendant's employee, one Miles, to disconnect the electric wires on his old house from defendant's power lines, but Miles said it was unnecessary that the family be deprived of electricity while the house was being moved, and he supplied some extra wire which he instructed Richards how to handle. By direction of Miles the slack of this additional wire was wrapped around a small tree near the house. From this small tree to the house the wire hung low and near the ground. While the power wires of defendant were connected with Richards' house in this fashion, an electric and rainstorm arose; the temporary electric wires were discovered to be ablaze; an adult son of Richards rushed out with an axe and severed the wire, but the part attached to the power line began to twist and writhe and to emit fire and sparks and apparently came in contact with the young man's body and gave him a shock which knocked him down. Richards rushed out to rescue his son and received a shock which killed him instantly.

Plaintiff charged the defendant power company with negligence in various respects, but particularly in failing to install proper devices to arrest and ground the violent currents of electricity which get into high tension wires in times of electrical storms and wreck the transformers whose function it is to reduce the high voltage to a degree safe for domestic use.

Defendant's answer included a demurrer, a denial of negligence on the part of defendant and its employees, a denial that Miles had any authority to give instructions to Richards concerning the connecting and disconnecting of electric wires, and an allegation that Richards' death was occasioned by his own negligence.

Jury trial; special findings; general verdict for plaintiff; defendant's motion for judgment on special findings overruled; judgment for plaintiff; appeal.

Defendant presents but one question for our review. It contends that it was entitled to judgment on the special findings of the jury, particularly on the two following:

"6. Do you find that the wires were struck by lightning, and if so was that fact the direct and proximate cause of the injury sustained by the deceased? A. Yes. . . .

"9. If you find the defendant company negligent, state what particular acts constituted such negligence. A. Insufficient groundage was not installed at transformers, and that the one said Miles did not make such connections or disconnections for said company on plaintiff's request."

Defendant argues that since the jury found that a stroke of lightning was the proximate cause of the death of Richards, there can be no recovery against it because of its negligence in failing to install sufficient ground wires at the transformers.

This contention is superficially plausible, but we cannot adopt it. In the first place, question No. 6 is a double question and the second part of it was simply a careless and inapposite use of legal phraseology. There was no allegation, no issue, in this case that Richards was killed by a stroke of lightning. Defendant itself does not make that claim. Its position, as well as its understanding of plaintiff's position, is thus stated in its brief:

"In the case at bar the theories of the opposing parties, and the facts offered in support of those theories, were directly conflicting. As heretofore suggested, appellee contended that lightning struck the line, breaking down the transformers and permitting the high voltage current to flow into the secondary wires. Appellant denied that lightning had struck the line; denied that the transformers had broken down, and claimed that appellee was killed by 110 volts."

In overruling defendant's motion for judgment the trial court so minimized the second part of finding No. 6 that it was virtually set aside, as it should have been. The court said:

"I have never attached so very much importance to the answer of the jury to question 6, even admitting that it is an affirmative answer to both angles of the question. The answer made by the jury cannot change the fact, and in this case, under the record, the jury having found what the negligence was, if in fact there was any, I believe it becomes a question for the court to say what was the proximate cause of the injury."

The trial court then proceeds to discuss the evidence and the pertinent law as deduced from our not very consistent precedents,

particularly *Simon v. Telephone Co.*, 97·Kan. 42, 154 Pac. 242, and *Crow v. Colson*, 123 Kan. 702, 256 Pac. 971, and reached the conclusion that—

"Failure to put in the ground wire, if negligence, and this has been passed as established, did not simply furnish the condition or give rise to the occasion, whereby the large voltage on the high line got over onto the house line and killed the man, but that such was itself the proximate cause of its so doing."

Of course the problem of proximate cause is commonly a question for a jury; but where plaintiff tendered an issue and evidence as to the cause of Richards' death and defendant joined issue thereon, it was the function of the jury to decide that issue, and not to return an irrelevant and baseless finding on a matter not in issue. But we do not blame the jury. Its affirmative response to the second part of the dual question No. 6 was manifestly induced by their inadvertent assent to the matter not in issue which was improperly included in that question. Furthermore, even if Richards' death had been caused by a bolt of lightning, and its deadly work had only been possible because of defendant's negligent failure to install ground wires at the transformers, defendant's liability would have been absolute nevertheless. · A defendant is not relieved of liability for negligence on the excuse that the "proximate cause" was some act of God like a stroke of lightning where the act of God would not have wrought the injury but for the human negligence which contributed thereto.

In *Jackson v. Wisconsin Telephone Co.*, 88 Wis. 243, 26 L. R. A. 101, some telephone wires were negligently left strung on a county fair building and on plaintiff's barn. The wires had theretofore been temporarily connected with defendant's trunk-line wires near by. The jury found that a stroke of lightning hit the county building and that the lightning electricity passed over the abandoned wire to plaintiff's barn and set it on fire. In affirming a judgment against the telephone company for damages for the destruction of the barn, the court said:

"The further argument is made that the stroke of lightning was the 'act of God,' for which no one is responsible. Certainly a stroke of lightning is an 'act of God'; but that is not the question here presented, or rather another element—*i. e.*, the negligence of man—is added to the question, which materially alters its scope. If I, owning a high mast or building, which I know is so situated as to be very likely to be struck by lightning, construct an attractive path for the lightning to my neighbor's roof, so that his house is destroyed by a bolt which strikes my mast or building, shall I escape liability

for my negligent or wrongful act by pleading that the lightning was the act of God? Certainly not. I invited the stroke of one of the most destructive powers of nature, and negligently turned its course to my neighbor's property." (p. 253.)

In 22 R. C. L. 131 it is said:

"Where an act of God unites with human negligence in causing injury, decisions may be found in which the negligence· of the human agent is treated as a condition, and not as a cause of the injury, but this view has been discarded by most courts, and the rule laid down that, when negligence of a responsible person concurs with a flood or storm or other so-called 'act of God' in producing an injury, the party guilty of such negligence will be held liable for the injurious consequences, if the injury would not have happened but for his failure to exercise care. Thus a person whose negligence is the primary cause is not excused because a stroke of lightning intervenes to precipitate an injury."

Recent cases illustrating and applying this rule are: *Starling v. City of Gainesville*, (Fla. 1925) 106 So. 425; *Bennington v. Fillmore & Slade et al.*, 98 Vt. 405, 421.

In *Kindell v. Franklin Sugar Ref. Co.*, 286 Pa. St. 359, 363, the. same principle was reduced to the terseness of a legal maxim:

"He whose negligence joins with the act of God in producing injury is liable therefor." (Syl. ¶ 2.)

In *Pinson v. Young*, 100 Kan. 452, 164 Pac. 1102, a fireman was killed by an explosion of dynamite negligently stored in a building which caught fire. The fire caused the dynamite to explode. This court said:

"It is next contended that the fire, and not negligent storage of the dynamite, was the proximate cause of Pinson's wrongful death. Both were proximate causes. The fire alone would not have caused his death. The dynamite alone might not have caused it. Perhaps the fire was the result of negligence. The storage of the dynamite was undoubtedly so. These two contributing delinquencies, the fire and the negligent storage of the dynamite—both proximate—wrought this result." (p. 455.)

And so here. The lightning would not have wrecked the transformers and let the high-tension current into the secondary wires leading to the house but for the negligence of defendant in failing to install sufficient ground wires to render the lightning harmless. The lightning, the high-tension current, and the negligence, were all contributing factors to the death of Richards; and the trial court did not err in overruling defendant's motion for judgment on the special findings.

A point raised by appellee should be noted. In the oral argument of this case appellee's counsel found fault because of appellant's failure to provide a transcript of the testimony and to abstract the same for our perusal. In their brief, also, they are nonplused because this court denied their request to be furnished with "an abstract of the evidence setting up the reasons" why this court relieved appellant from making an abstract of the record. Counsel are entitled to have that mystery unraveled. The application was granted as of course. No evidence was adduced in its support. It required none. Since the only question presented for review was whether judgment should have been entered for defendant on the special findings of the jury, the existence of sufficient evidence to support those findings was conceded; so why waste the client's money printing that evidence, and why impose on our eyesight the useless task of reading it? In *Lasnier v. Martin,* 102 Kan. 551, 171 Pac. 645, it was said that the failure to provide a transcript of the evidence merely had the effect of excluding from the scope of the review those features of the lawsuit dependent thereon. For such limited review as appellant desired in this case, all that was needed was an abridgment of the pleadings to show what the lawsuit was about, the special findings and general verdict, defendant's motion for judgment on the special findings, and the trial court's ruling thereon. The student of appellate practice who would lighten his own labors as well as those of this court, without disadvantage to his cause, will find helpful suggestions on this subject in *Hegarty v. Refining Co.,* 110 Kan. 171, 204 Pac. 144; *Buckwalter v. Henrion,* 111 Kan. 781, 208 Pac. 645; *King v. Stephens,* 113 Kan. 558, 560, 215 Pac. 311; *Amusement Syndicate Co. v. Martling,* 118 Kan. 370, 376, 235 Pac. 126; *Smith v. Tri-County Light & Power Co.,* 120 Kan. 354, 241 Pac. 1090; *Commerce Trust Co. v. Pioneer Cattle Loan Co.,* 120 Kan. 712, 716, 244 Pac. 840.

The judgment is affirmed.