No. 34,983

ADAM SCHREINER and LYDIA SCHREINER, *Appellants*, v. C. H. ROTH-GARN and A. P. ROTHGARN, *Appellees*.

(114 P. 2d 834)

Opinion filed July 5, 1941.

*Clyde P. Cowgill,* of Topeka, for the appellants.
*Wayne H. Lamoreux,* of Great Bend, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is the second appearance of this case in this court. (150 Kan. 325, 92 P. 2d 59.) The action arose out of a contract of purchase and sale of a Rush county farm belonging to C. H. Rothgarn which plaintiffs agreed to buy for $3,700. That contract was executed in 1932. Plaintiffs owned some town property in Iowa, and they made a deed to it in blank and delivered it to Rothgarn with the understanding that he should sell it. What he should do with the proceeds was a controverted matter in this action. Plaintiffs alleged that he sold the Iowa property for $1,600 and was to hold the proceeds for them. Rothgarn alleged that he sold it for a price which netted $712.69, and that he was entitled to keep that sum as a down payment on the Rush county farm.

Be that as it may, the contract for the sale of the Rush county farm seems to have been breached or abandoned, but under such circumstances as justified plaintiffs' demand for the return of the sales price of the Iowa town property. Hence this action, com-

menced on or after January 4, 1938, (date not shown) for its recovery. In plaintiffs' petition A. P. Rothgarn was joined as a defendant with C. H. Rothgarn, her husband, and it was alleged that C. H. Rothgarn *was the agent* of his wife. The main issue raised by the pleadings was the price at which the Iowa town property was sold. Plaintiffs alleged that "in the spring or summer of 1932" C. H. Rothgarn sold the property for $1,600, and that he promised the plaintiffs that he would keep the money for them, and that he gave that sum of money to his wife, A. P. Rothgarn—he being then her agent, and that he was then "acting within the scope of said agency and at the same time acting in his own behalf."

Defendants filed separate unverified answers. That of A. P. Rothgarn contained a general denial and invoked the statute of limitations. C. H. Rothgarn's answer likewise contained a general denial, and gave his version of the facts of the contract between himself and plaintiffs for the purchase and sale of the Rush county farm. He set up a copy of that contract, and alleged that its conditions were broken by plaintiffs, and that he sold the Iowa town property at a price which netted $712.69.

To these unverified answers plaintiffs filed general denials; and to the answer of C. H. Rothgarn they further replied that the Rush county farm contract was fraudulent, and they specifically denied that the proceeds of the Iowa town property was to be a down payment on the Rush county farm.

The cause was tried before a jury which returned a verdict for $600 in favor of plaintiffs and against C. H. Rothgarn. The jury also made special findings, which read:

"1. Did the plaintiffs give a deed for their town property in Milo, Iowa, to the defendant C. H. Rothgarn, as a down payment on the Rush county farm, which the defendant C. H. Rothgarn had agreed by written contract to sell to the plaintiff Adam Schreiner? A. No.

"2. Did the plaintiffs give a deed to the defendant C. H. Rothgarn for the town property in Milo, Iowa, for the purpose of having the said defendant C. H. Rothgarn sell said property in Milo, Iowa, for the plaintiffs, the money obtained from said sale to be paid by the said C. H. Rothgarn to the plaintiff? A. Yes.

"3. In the transaction with reference to the Milo, Iowa, town property, do you find that C. H. Rothgarn was acting as a real estate agent? A. Yes, to accommodate the plaintiffs at the plaintiffs' request.

"4. What was the total selling price of the town property in Milo, Iowa, which was sold by the defendant C. H. Rothgarn? A. $775.

"5. What was the amount of money actually received by the defendant C. H. Rothgarn, from the sale of the town property in Milo, Iowa? A. $712.69.

"6. What did the defendant C. H. Rothgarn do with the money which he received from the sale of the town property in Milo, Iowa? A. We believe that not sufficient evidence was produced to prove definitely what C. H. Rothgarn did with the money.

"7. Was the defendant Mrs. A. P. Rothgarn in the city of Great Bend, Kan., during the months of March or April, 1935? A. No.

"8. Did the defendant Mrs. A. P. Rothgarn tell Mrs. Schreiner, one of the plaintiffs, in the city of Great Bend, Kansas, that she, Mrs. Rothgarn, had received the sum of $1,600 from the defendant C. H. Rothgarn, and that she, Mrs. Rothgarn, was keeping said money for the plaintiffs? A. No.

"9. If you answer the foregoing question 'Yes,' then state in what month of the year, 1935, you find said statement was made by Mrs. A. P. Rothgarn to Mrs. Schreiner? A. ———

"10. Did the defendant Mrs. A. P. Rothgarn receive the sum of $1,600 from the defendant, C. H. Rothgarn, which sum of money was from the sale of the town property in Milo, Iowa, and which said sum of money belonged to the plaintiffs from said sale? A. No."

Judgment was rendered accordingly against C. H. Rothgarn, and that as against A. P. Rothgarn plaintiffs should take nothing.

Plaintiffs appeal, making certain contentions which, so far as pertinent, will be noted below; but first we must take note of appellees' challenge of plaintiffs' right to be heard, for the reason that no transcript of the record has been provided which would enable this court to review the errors urged on our attention, and for the further reason that questions in this appeal are urged on our attention which were not presented to or ruled upon by the trial court.

The want of a transcript of the record and the want of an abstract based on such transcript does not necessarily prevent any appellate review, but it does preclude a review of all trial errors which a transcript of the record alone could portray. (*Buckwalter v. Henrion,* 111 Kan. 781, 208 Pac. 645; *Putnam v. City of Salina,* 136 Kan. 637, 17 P. 2d 827; *Mercer v. Kirkwood,* 147 Kan. 637, 77 P. 2d 929.)

Noticing such points urged by plaintiffs as the want of a transcript will permit us to review, they contend that Mrs. A. P. Rothgarn should not be relieved of liability because in her answer she did not deny under oath the allegation in plaintiffs' petition that her husband, C. H. Rothgarn, was her agent. If that alleged fact were of the slightest consequence in this lawsuit, appellees have a perfect answer to it. Plaintiffs did not stand on that point in the trial court but filed a reply to Mrs. Rothgarn's answer—which prevents any effect to be given now to the point urged by plaintiffs. (*Collis v. Kraft,* 118 Kan 531, 235 Pac. 862; *Cook v. Donner,* 145 Kan. 674,

676-677, 66 P. 2d 587; *Brandtjen & Kluge, Inc., v. Lucas,* 153 Kan. 138, 109 P. 2d 197.) An equally good and less technical answer to plaintiffs' contention on this point is that the record reveals no facts which would make the agency of C. H. Rothgarn for his wife of the slightest materiality in this action. Mrs. Rothgarn had no dealings with plaintiffs whereby she might be bound by some act of her agent. If the situation were turned about so that Mrs. A. P. Rothgarn had agreed with plaintiffs to sell their Iowa town property and to account to them for the proceeds, and if she had authorized C. H. Rothgarn to act as her agent in that transaction, then there might be a talking point that Mrs. Rothgarn would be bound by the acts of her agent. But no such situation was presented, and it ought not to be difficult, even for plaintiffs, to realize how untenable is the contention advanced in their behalf that Mrs. Rothgarn could be bound to them on account of some groundless allegation of fanciful agency of her husband acting in her behalf.

Plaintiffs also contend that judgment for $1,600 should be ordered against C. H. Rothgarn because, they say:

"There is nothing to deny the allegation that Rothgarn was only authorized to sell the Iowa property for plaintiffs for $1,600."

Here again there are two answers to this point. There was no such specific allegation in plaintiffs' petition; and if there were, it was traversed by Rothgarn's answer. What the evidence on this issue may have been, the want of a transcript prevents this court from knowing; but in any event it was settled favorably to defendants by the general verdict of the jury.

We have said that the want of a transcript does not altogether preclude an appellate review—if the pleadings, instructions, verdict and special findings reveal any errors which this court can correct despite the want of a complete record of the trial. (*Richards v. Kansas Electric Power Co.,* 126 Kan. 521, 526, 268 Pac. 847.) But a patient reading of the limited record in this case discloses nothing this court can lay hold of to disturb the judgment, nor does the record hint that some miscarriage of justice may have transpired of which these plaintiffs can complain. The judgment is therefore affirmed.