No. 36,119

Anna May Foster and Ralph Foster, *Appellees* and *Cross-appellants*, v. Blanch Anna Allen and Charles R. Allen, *Appellants*.

(152 P. 2d 818)

Opinion filed November 4, 1944.

*J. S. Simmons* and *Stuart Simmons,* both of Hutchinson, were on the briefs for the appellants.

*Jerry E. Driscoll* and *Harold W. McCombs,* both of Russell, were on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action for a declaratory judgment as to the right of the plaintiffs to execute oil and gas leases on, and for judgment quieting title to, a contiguous tract of land lying in Barton and Russell counties, the land having at one time been owned as

tenants in common by Charles D. Davidson, who died in 1930, and his wife, Anna B. Davidson. Anna May Foster, a daughter of Charles D. Davidson, and her husband Ralph Foster, were plaintiffs, and the defendants included a daughter of Davidson, Blanch Anna Allen, and her husband Charles R. Allen, who are appellants here, as well as the widow and other children, or issue of deceased children of Davidson, and some others, none of whom were served with notice of appeal. At the trial the court made findings of fact and conclusions of law and rendered judgment, as more fully set forth later. The real questions in issue were the construction of the will of Charles D. Davidson and the validity and effect of two deeds to the plaintiffs and of an escrow agreement made in connection therewith. From the judgment rendered defendants Allen appeal, and the plaintiffs appeal from the rulings pertaining to the will.

The allegations of the petition are summarized. It was alleged that on January 16, 1926, Charles D. Davidson and Anna B. Davidson, his wife, were the owners of the certain real estate, and on that day entered into a contract in writing whereby they agreed to sell and convey the real estate to the plaintiffs, a copy of the agreement being attached as part of the petition, and later mentioned. On the same day the Davidsons, for a valuable consideration executed and delivered two warranty deeds, one conveying the land in Russell county, the other conveying the land in Barton county; that pursuant to the written agreement and the intention of the parties, plaintiffs entered into possession of the real estate and since then have paid to the Davidsons or the survivor the sum of $500 on March first of each year and all taxes assessed against the real estate and have fully performed all the terms and conditions of the contract to be performed by them. That if the agreement and deeds failed to show the rights of plaintiffs, such failure, if any, was due to mutual mistakes of the parties, or error on the part of the scrivener in preparation of the instruments and such instruments should be reformed. It was further alleged that Charles D. Davidson died February 12, 1930, a resident of Barton county, and that his last will, a copy of which was attached and made part of the petition, and is later mentioned, was duly admitted to probate; that the estate was closed March 25, 1933, but that no findings were made by the probate court of Barton county, or other court of competent jurisdiction, determining who were heirs or devisees, or the nature, character or extent of the property passing under the will, but plaintiffs alleged

that none of the real property involved passed under the will of Charles D. Davidson. It was also alleged that the above deeds were actually delivered to plaintiffs and by them in turn delivered to the escrow holder for the sole purpose of securing payment of the taxes and the annual payments of $500, and that it was the intention of all parties that plaintiffs should be entitled to the immediate possession of the real estate, with the right to collect the rents and profits and the right to execute oil and gas leases and to collect and receive the proceeds therefrom. Then follows allegations about oil and gas leases and provisions for rents and royalties to be paid to Anna B. Davidson. These are followed by an allegation that on February 19, 1942, Anna B. Davidson by quitclaim deed conveyed to plaintiffs all her interest in the involved real estate, present, contingent and in expectancy, but reserving to her a certain interest for her natural life in the oil, gas and minerals, the details of which are not in controversy. It is then alleged, in detail, that controversy had arisen whether any of the real estate passed under the will of Charles D. Davidson, deceased, and if so the nature of what passed, and as to who could execute oil and gas leases; that oil and gas in paying quantities was being produced from the lands and there was controversy as to who was entitled to share in the landlord's share therein. Plaintiffs alleged that Charles D. Davidson had parted with all his interest by reason of the escrow agreement and deeds mentioned, except for the possibility of reverter therein, and that upon his death the reverter came to an end, and they further alleged that if any of the real estate passed under his will it vested in Anna B. Davidson, subject only to defeasance if she remarry, and that all her rights passed under her quitclaim deed to plaintiffs. Plaintiffs further alleged that excepting Anna B. Davidson, the defendants, especially Allen and Allen, contended that at the time of his death Charles D. Davidson was the owner of a possible reversionary interest in the involved real estate and under the terms of his will Anna B. Davidson acquired only a life estate with remainder to his children and they were all necessary parties to the execution of any valid oil and gas lease. Then followed allegations appropriate to a quiet-title action and for a judgment declaring the rights of the parties, and if the agreement and deeds do not express the intention of the parties, for reformation thereof, for judgment plaintiffs are the owners in fee simple of the real estate, subject to the rights of Anna B. Davidson under her quitclaim deed to them and for judgment quieting title.

The escrow agreement mentioned was dated January 16, 1926, and was between Charles D. Davidson and Anna B. Davidson of the first part and Anna May Foster and Ralph Foster of the second part, and provided that first parties agree with second parties to deposit in a named bank two warranty deeds of even date conveying the real estate involved, and that the bank was authorized to deliver the deeds to the grantees upon notice of the death of both of the grantors. The remainder of the contract, excepting the witnessing clause, recites:

"In consideration of which, the said parties of the second part covenant and agree to pay unto the said parties of the first part at the above named bank, for the use and benefits accruing to them from said land during the lifetime of either one or both of the said parties of the first part, an annual rental of $500 on the first day of March, 1927, and on the first day of March of each succeeding year thereafter. Said payments terminating after the decease of the last surviving party of the first part, and in addition to the said cash rental the said parties of the second part, shall pay all taxes and assessments as they become due. Which may be legally imposed upon said premises, subsequent to the year 1925.

"Time shall be the essence of this agreement, and in the case of the failure of the said parties of the second part to make either of the payments as hereinbefore stated then this contract shall be the option of the parties of the first part, be forfeited and determined and the parties of the second part shall forfeit all payments made by them, and such payments shall be retained by the said parties of the first part.

"It is further agreed that in event of death of both parties of the second part, prior to the death of both parties of the first part, then this agreement is null and void, and the above mentioned deed left in Escrow shall be returned to parties of the first part by the said bank."

The two deeds referred to in the pleadings and the agreement were alike except for description of the lands conveyed. They were dated January 16, 1926, the Davidsons were the grantors and the Fosters were grantees. The stated consideration was one dollar, love and affection and in the granting clause the real estate was conveyed to the grantees "for the term of their natural life." The deed contained restrictions on alienation, which are not here material, and continued:

"And upon the death of the said grantees above named the remainder in fee-simple in and to the said real property shall immediately vest in the then surviving issue of the body of said Anna May Foster, share and share alike, in case there are any such surviving issue of said Anna May Foster, but in case there are no such surviving issue of said Anna May Foster, then the said remainder in and to the said real property shall revert to and become a part of the estate of the undersigned grantors herein, subject to distribution as such.

Provided however, that the said parties holding the said life estate shall have the right to renew certain oil and gas leases now on said premises or to execute an oil and gas lease upon said premises at the expiration of the one now existing; that such renewal or the execution of such new lease shall be binding upon the interest of the remaindermen in said real estate; and that the rents and royalties from either of such leases shall become the property of the holder or holders of the title of the said real estate at the time said rentals or royalties became due."

The will of Charles D. Davidson is abstracted and quoted as follows:

Following an opening paragraph that he is making his will it is recited that:

"And as to my worldly estate, and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath, and dispose thereof in the manner, to wit:"

Then follows a direction his executrix shall pay his debts as soon as convenient, bequests of five dollars to each of his five children, who are named, and—

"THIRD;—All the rest and residue of my estate, real, personal and mixed of which I shall die seized and possessed or to which I shall be entitled at my decease, I give, devise, and bequeath to my wife Annie B. Davidson, to have and to hold the same during her natural life; provided, however, that in the event that my wife Annie B. Davidson shall remarry at any time after my decease, then one-half of my entire estate shall immediately pass to my five children named under the second clause and they shall share equally in the same."

The remaining portions of the will consist only of the appointment of his wife as executrix and the witnessing clause.

The answer of the defendants Allen made certain admissions and denials which need not be set out at length, alleged that plaintiffs ought not to be permitted to say the probate court had made no findings as to who were devisees under the will of Charles D. Davidson, or that the real estate was no part of his estate, and also that any action to construe the will was barred within one year after March 25, 1933 (date of final settlement). Their prayer was that the plaintiffs be denied the relief for which they prayed in their petition.

At the trial a considerable amount of oral testimony was received. This testimony did not disclose any great dispute of fact, but there was question as to the competency of much of it. As requested, the trial court made findings of fact and conclusions of law.

For the purposes of this appeal, it may be said the trial court found the only contest was between the plaintiffs Foster and the defendants Allen; that Charles D. Davidson and Anna B. Davidson, his wife, were the owners as tenants in common of the real estate involved; that the Davidsons entered into the above mentioned escrow agreement with the Fosters and executed the deeds mentioned in it; that when the deeds were executed Charles D. Davidson handed them and the agreement to Anna May Foster and said, "I will make you a present of these deeds. Put them in the Farmers and Merchants Bank in escrow." That Anna May Foster then gave Charles D. Davidson two dollars, being the monetary consideration of the deeds, and gave the documents to the cashier of the bank, where they have since been held. Prior to January 16, 1926, the Fosters had occupied the land as tenants, paying an annual rental of $500 and thereafter they paid $500 annually and the taxes on the lands. They made lasting and valuable improvements on the lands both before and after the contract. At the same time similar contracts were made with Frank Davidson and with Marshall Davidson for other real estate. Charles D. Davidson made his will November 3, 1923, and died February 12, 1930. His estate was probated in Barton county and closed March 25, 1933, at which time the probate court made a finding as to who were heirs and devisees but made no determination as to their interests in the property of the decedent. About March 25, 1940, oil and gas leases were made to one Kirkham (not a party to the action) on the real estate involved, the leases being executed by the plaintiffs Foster, also Anna B. Davidson, Frank C. Davidson and wife, Harry Foster and wife, Mary E. Hutson and husband, and Marshall F. Davidson and wife. On July 16, 1942, Anna B. Davidson quitclaimed to the plaintiffs Foster, all of her interest, present, contingent and in expectancy, in the real estate, reserving for her natural life certain interests in oil, gas and other minerals, which need not be set out here. Anna B. Davidson was living when the finding was made, was seventy-eight years old and had never remarried.

As matters of law the trial court concluded that the contract and deeds of January 16, 1926, were made contemporaneously and as part of one transaction; that they were testamentary in character and no title vested in plaintiffs Foster by reason of the deeds; that while they were inoperative as instruments of conveyance, it did not necessarily follow that plaintiffs Foster were without relief. The

agreement was for the sale of the lands, some of the terms of the contract being found in the deeds; that plaintiffs had performed all conditions to be performed by them and while they did not have the legal title, they did acquire the equitable title, and the right to insist upon performance of the contract; that the third paragraph of the will of Charles D. Davidson created a life estate only in Anna B. Davidson, subject to defeasance in the event she remarry; that no present interest vested in the children by reason of that provision, but that the testator died intestate as to the remainder of his estate after termination of the life estate to his widow and the five children had a vested interest in this remainder; that applied to this action the devisees took subject to the obligation of the testator under his contract; that plaintiffs Foster had no title by adverse possession; that the findings of the probate court of Barton county did not preclude the trial court from construing the will; that the plaintiffs Foster were authorized to execute the oil and gas leases of March 25, 1940, by reason of the provisions in the deed giving the persons holding the life estate such right; that right was contractual and properly conferred on the holders of the equitable title; that the quitclaim deed of Anna B. Davidson to plaintiffs Foster divested her of any interest in the land, other than her reserved right in the minerals; that the equitable title held by plaintiffs to the undivided half-interest of Charles D. Davidson may revert to his estate if both plaintiffs should die prior to the death of Anna B. Davidson, and—

"8. To summarize, the plaintiffs are the owners of an equitable title in a life estate in and to all of the lands involved in this action, subject only to the rights of Anna B. Davidson in the oil, gas and other minerals reserved in her deed of February 19, 1942, and subject to the possibility that an undivided half interest therein may revert to the estate of Charles D. Davidson, deceased, if both plaintiffs shall die prior to the death of Anna B. Davidson, or if Anna May Foster shall die without surviving issue. The defendants, Blanch Anna Allen and Charles Allen, her husband, have no present interest in said land. That the rights of the lessee and his assigns under the leases mentioned in Finding No. 8 are superior to the claims of all of the defendants herein except Anna B. Davidson, and that said defendants are entitled to none of the rents and royalties or other income under said leases."

The trial court referred to certain evidence admitted over objection which defendants had moved should be stricken out (Sup. Ct. Rule 53) and held the evidence of Anna B. Davidson and of H. M. Starr as to the contract, was properly received in evidence, but that their testimony in connection with the will of Charles D. Davidson should be stricken. The trial court rendered judgment for plaintiffs

consistent with its conclusion of law No. 8. Plaintiffs Foster and defendants Allen each filed motions for a limited new trial. These motions were denied and, as previously indicated, the defendants Allen appealed generally, and plaintiffs Foster appealed from that part of the decision that Anna B. Davidson took only a life estate under her husband's will and matters related thereto. To avoid confusion the parties will be referred to hereafter by their surnames.

The Allens contend that the warranty deeds from the Davidsons to the Fosters, and the escrow agreement between the same parties, being a part of the same transaction, must be construed together, and that so construed they are testamentary in character, and (because not executed as provided by the statutes pertaining to wills) are void. As to the first parts of this contention not much time need be devoted. The Fosters concede that the contract and deeds, having been executed contemporaneously, must be construed as one instrument (*Haston v. Citizens State Bank*, 132 Kan. 767, 297 Pac. 1061), and that so construed they are testamentary in character. (*Imthurn v. Martin*, 150 Kan. 906, 96 P. 2d 860, and cases cited.) In support of their contention that the instruments, being testamentary in character, are void and no rights pass under them, the Allens direct our attention to cases holding generally that where a deed is placed in escrow no title passes prior to fulfillment of conditions, e. g., *Pomeroy v. Insurance Co.*, 86 Kan. 214, 120 Pac. 344, 38 L. R. A., n. s., 142, Ann. Cas. 1913 C 170; *Business Blocks Co. v. Gregory*, 102 Kan. 33, 169 Pac. 191; *Volker v. Crumpacker*, 154 Kan. 403, 118 P. 2d 540. A casual reading of those cases will disclose that in none of them was there performance of the contract by one of the parties, so that he could or did invoke the aid of equity, nor is there any discussion of the proposition that although the deeds might be ineffectual as conveyances, the initial agreement might not be pleaded and relied on. This court long since recognized that an instrument might be testamentary in part, and contractual in part (*Powers v. Scharling*, 64 Kan. 339, 342, 67 Pac. 820). A contention was made in *Stahl v. Stevenson*, 102 Kan. 844, 171 Pac. 1164, that a contract by a grandchild with its grandparent to receive a part of his property at his death was testamentary in character, and unenforcible because not executed in accordance with the statute pertaining to wills. This court said that had such a will been formally executed, it might be revocable as a will but the contract rights of the beneficiary would not thereby be abrogated. And in *Imthurn v.*

*Martin,* supra, where the question was the right of one who had performed under a written contract, testamentary in character, to recover, it was held:

"The fact that such an instrument may not be valid as a will does not prevent enforcement of its contractual provisions." (Syl. ¶ 3.)

The Allens further contend that the provisions of the deeds and contract for possession and for payments are parts of the same transaction and fall for the reason above discussed and not sustained; but if not, the terms of the agreement as evidenced by the instruments constitute a plain and definite rental contract and not a contract of sale. Coupled with this contention is the further one that evidence of the intention of the parties in making the contract and any mistake of the scrivener in drawing it was incompetent, first because the contract is plain and unambiguous and no evidence was needed to aid in its construction, and second it was an attempt to change a written contract by parol evidence. Our attention is directed to *McBratney v. Chandler,* 22 Kan. 692, holding that where a contract for services partly lawful and partly unlawful is so blended together to make a single employment, the entire contract is vitiated; to *Henshaw v. Smith,* 102 Kan. 599, 171 Pac. 616, that where a contract contains valid and invalid provisions if the lawful can be readily severed, that portion will be upheld; and to *Purcell v. Baskett,* 121 Kan. 678, 249 Pac. 671, where it was held that a written instrument in the form of a deed which declares it is to be null and void until death of the grantor, and contains no other language creating an ambiguity, passes no title and is invalid unless executed as a will. (It may here be noted the last case involved no contractual rights to a deed.)

With the above as a premise it is argued that the escrow agreement and deeds in question show a contract for rental and not for purchase, that they are not ambiguous, and are not subject to explanation by parol testimony. The argument that a rental contract is clearly indicated is predicated on the fact the escrow contract provides that for the use of said lands the Fosters were to pay an annual *rental* of $500, and that there is absent any statement that it is a payment on the land. It may be said that such a construction considers only a part of the whole matter evidenced by the escrow agreement and the deeds, and ignores the deeds entirely. If the agreement were solely a rental agreement as contended, the deeds served no purpose except to describe the real property. The agree-

ment further provides, however, that if the Fosters fail to make the payments provided, at the option of the Davidsons, it shall be forfeited, in which event the Fosters shall forfeit all payments made by them. That this is any part of a rental agreement may hardly be argued. Forfeiture of payments made indicates that something is being purchased. Without further discussion, we think the trial court correctly ruled in holding the contract and deeds were ambiguous and in receiving evidence of Anna B. Davidson and H. M. Starr, the scrivener, to determine whether the transaction was a rental or a purchase agreement. That evidence need not be detailed. It was sufficient to support the conclusions of fact and law reached by the trial court and the judgment rendered insofar as that aspect of the matter is concerned.

Our attention is directed to some evidence from which the trial court might have reached a different conclusion. Conceding there was such evidence, we can only repeat our established rule that the findings of fact of a trial court, made from disputed evidence, are conclusive on appeal.

Under a general heading as to reformation of the contract, the Allens direct our attention to *Travis v. Glick*, 150 Kan. 718, 96 P. 2d 624, holding that an action to reform a deed for alleged mutual mistake, must have been brought within five years after its execution (G. S. 1935, 60-306, *sixth*) and to *Reitz v. Cooper*, 123 Kan. 755, 764, 256 Pac. 813, where it was said that the true rule is that before an ancient deed may be reformed for mistake, the evidence must be clear and convincing, and argue the present action is barred, or if not, the evidence is not sufficient. Perhaps an all-sufficient answer to the contention is that there was no reformation. It may be observed further, however, that while the Allens did plead a statute of limitations respecting construction of the will of Charles D. Davidson, they did not so plead as to reformation the statute above mentioned. As stated, there was no judgment for reformation. The trial court construed the escrow agreement, the deeds, and the evidence offered to explain ambiguities, and therefrom determined the agreement. The trial court, not this court, had the duty of determining whether the evidence was clear and convincing, if the question were otherwise here.

As has been noted, the Fosters appealed from that part of the trial court's findings, conclusions and judgment that under the will of Charles D. Davidson, his widow took only a life estate in the

residue, subject to diminution if she remarried. They contend that under the will, the widow took the fee. Our attention is directed to familiar rules for interpretation and construction of wills, which need not be reviewed here. Our attention is also directed to the statute as it existed when the will was made and when it was admitted to probate that:

"Every devise of real property in any will shall be construed to convey all the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to convey a less estate." (G. S. 1935, 22-258.)

And it is contended that under our decisions in *In re Brown*, 119 Kan. 402, 239 Pac. 747, and *Jameson v. Best*, 124 Kan. 633, 261 Pac. 582, the present will must be construed as giving the widow a fee simple estate. In the Brown case the will, after providing for payment of debts and funeral expenses, gave the residue to the wife,

". . . to have, to hold, to her my said wife, *as long as life doth last,* and that she (my said wife) may dispose of the same in any manner and for such purpose as she may deem best." (l. c. p. 402.)

The will was admitted to probate. Later the wife made a will disposing of the property, which will was set aside because of her mental incapacity. The couple had no children, and the controversy was between the collateral heirs of the deceased husband and the deceased wife. This court made an analysis of what was meant by "as long as life doth last," considered the power of disposition given the wife as consistent with absolute ownership, noted there was no remainderman, and reached the conclusion the testator intended to and did give his wife a fee simple estate. In *Jameson v. Best,* supra, the opinion sets out pertinent provisions of the will, which are referred to and not repeated here. There certain language that legacies and devises were to be held "for and during their natural lives, subject to the following terms and conditions," were by such subsequent terms and conditions, when considered in connection with the will as a whole, such as to impel the conclusion the will vested in the devisees the entire property of the testator, and there was no property undisposed of by it, or in other words that the devisees took the fee. Although the two cases mentioned may be said to afford color of support to the contentions made, we think they are not controlling here. The will must be read as a whole, and each part of it must be considered and not ignored. It is true that if it may otherwise be done, the will should be construed so

as to avoid intestacy, but to avoid intestacy, pertinent parts of the will may not be ignored. The will in question recites that "all the rest . . . I . . . devise . . . to my wife Annie B. Davidson, to have and to hold the same during her natural life;" followed by the proviso that if she remarry one-half of the estate shall immediately pass to the children. To adopt the construction contended for we would have to ignore and eliminate the plain provision for the life estate and say the testator intended his wife should have all his property in fee, subject to the fee being cut down if she remarried. As we interpret and construe the will, that is clearly not what the testator intended. Nor was that the interpretation placed on the will by the Fosters, Mrs. Anna B. Davidson and the other children, when they joined in the execution of oil and gas leases.

It is not contended that Anna B. Davidson elected to take under the law and not under the will. When she elected to take under the will she barred herself as an heir to intestate property. See *Compton v. Akers*, 96 Kan. 229, 150 Pac. 219, L. R. A. 1917 D 758, Ann. Cas. 1918 B 983 and *Butler v. Miller*, 116 Kan. 351, 225 Pac. 895, and cases cited. Anna B. Davidson took no part of the estate as to which the testator made no disposition.

In connection with their contentions, the Fosters also contend the trial court erred in striking out certain testimony which had been received over objection tending to show the intention of the testator to have been different than as expressed in his will, and that he intended to devise the fee and not a life estate. The language of the will is clear and parol evidence of the scrivener and others to prove a possible contrary intention of the testator was incompetent (*Alexander v. Goellert*, 153 Kan. 202, 109 P. 2d 146). The evidence was properly stricken.

We think the trial court did not err in holding that Anna B. Davidson took only a life estate under her husband's will.

In a particular not stressed we think the conclusion of law No. 8, quoted above, and the judgment based thereon, is subject to misinterpretation, if it is not erroneous. It is to be remembered that prior to January 16, 1926, Anna B. Davidson was the owner of an undivided one-half interest in the real estate. When she entered into the escrow agreement and deeds of that date the Fosters obtained only a life estate in her undivided interest as well as in the undivided interest of Charles D. Davidson, subject to being cut off if she survived them. By her quitclaim deed of February 19, 1942,

however, she conveyed to them her interest in the real estate, subject to the conditions of the deed, and as to her individually owned one-half interest they have the fee and not merely a life estate, and the conclusion and judgment should be amended to so show.

We note also that, under the contract evidenced by the escrow agreement and the deeds placed in escrow, following the life estate granted the Fosters, it was provided the fee should go to the then surviving issue of Anna May Foster. The record does not disclose whether there is any issue; if so they are not made parties in any manner, and their rights, if any, cannot be and are not determined here. (See *Ayers v. Graff*, 153 Kan. 209, 109 P. 2d 202.)

It is ordered that the conclusions of law and the judgment be amended to conform herewith and as so amended the judgment is affirmed.