No. 39,568

Lena Koepcke Walker, *Appellant,* v. Bertha Ellen Koepcke, et al., *Appellees.*

(282 P. 2d 382)

Opinion filed April 9, 1955.

*Arthur S. Humphrey,* of Junction City, argued the cause, and *James V. Humphrey,* of Junction City, was with him on the briefs for the appellant.

*Chas. I. Platt* and *Phillip L. Harris,* both of Junction City, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action for ejectment and partition of an alleged undivided interest in farm land. The trial court rendered judgment for defendants and plaintiff appeals.

The events giving rise to this lawsuit are necessary to a proper understanding of the appellate issues involved and the arguments advanced by the parties with respect thereto. For that reason we shall first give consideration to the essential facts on which the trial court based its judgment.

In a preliminary way it may be said that Hans Koepcke, a German immigrant, a resident of Geary County, and the owner of a 340 acre farm located in such county, on which he was living with his wife and some of the other members of his family, died testate on February 15, 1902, leaving surviving him his widow, Wilhelmina, and five children, namely: George, Walter, Anna, Bertha and Lena, and no children by predeceased children. The record presented does not give the exact ages of all the children at the time of his death. However, it does disclose they were all young, that George was the oldest and Lena was twelve years of age.

Approximately eight months prior to his death Hans Koepcke attempted to make disposition of his worldly effects by executing a last will and testament which should be quoted at length. It reads:

"July 16, 1901
"Hans Köpke of Blackely
"Township—Geary County
"State of Kansas.

"Mindful of the Unsertenties of humen life, do make publish; and declare this my last will and Testiment.—In manner following.—After the Payment of my gust debts and funeret expenses.—I give devise and bequeath to my Wive, Menne Köpke, All the rest residens and Remainder of all my real Estate, and pörsonel, Propperte, and Everting Belonging en my Premmesses.—

"During her Natguel Live.—

"I Hans Kopke, Epient my Wive as Adminnistrater.—with out Bonds.—

"(Hans Köpke.
"(    X mark.—

"Witnis C. F. Wetzel.
"Witnifs
"Gottlieb Heller
"Friederike Heller."

From this point on the factual picture is best depicted by findings of fact Nos. 3 to 8 inclusive, made by the trial court at the time of the rendition of judgment. Such findings, which we pause to note the record discloses are supported by substantial competent evidence, read:

"3. The foregoing will of Hans Koepcke was admitted to probate in the Geary County Probate Court on March 27, 1902. Wilhelmina Koepcke was appointed, and qualified, as executrix, and elected to take under the will. The estate of Hans Koepcke was finally settled April 14, 1923, and the Probate Court included in its final order the following: 'and the Court finds and adjudges that the heirs, devisees and legatees of the said Hans Koepcke, deceased, are as follows: Wilhelmina, his widow.'

"4. Wilhelmina Koepcke took possession of the land under controversy, paid the taxes and in all respects held herself out to be the owner thereof until her death which occurred April 21, 1930. She died testate. By the terms of her will Wilhelmina Koepcke made a specific bequest of the town property in Junction City, to the Plaintiff herein, Lena Koepcke Walker. Such town property was appraised in her estate at $4,000.00. All the residue of her property she left to George Herman Koepcke, with a provision that he pay to Anna M. Walker, Bertha W. Rosey, and Walter F. Koepcke, the sum of $3,000.00 each within two years of her death. The farm was inventoried and appraised in her estate at $11,000.00

"5. During the administration of the Wilhelmina Koepcke estate a family meeting was held attended by the Plaintiff, Anna M. Walker, Bertha W. Rosey, Walter F. Koepcke, and George Herman Koepcke. At this meeting the real property in controversy in the instant case was discussed. No question was raised as to the title of Wilhelmina Koepcke, and it was the common understanding among them that George Herman Koepcke was to receive the farm. No one of the participants in such meeting made any objection to the terms of their mother's will. The Plaintiff took the town property described in Wilhelmina Koepcke's will, and George Herman Koepcke took possession of the farm in controversy, and paid the $3,000.00 to each of the heirs designated in his mother's will, all with the knowledge and acquiescence of Plaintiff.

"6. The farm remained in the possession of George Herman Koepcke from that time until his death on April 27, 1950. During his occupancy he farmed it, paid taxes, made major and expensive improvements thereon, and held herself (sic) out to be the owner thereof. On October 23, 1937, he conveyed away a forty (40) foot right-of-way in the Southeast ¼ of Section 12, Township (13), Range 6, by dedication deed. On April 10, 1946, he also conveyed away a three (3) acre tract in the Northeast corner of the Southwest quarter of Section 12, Township 13, Range 6, for a consideration of $100.00.

"7. George Herman Koepcke died intestate on April 27, 1950, leaving the defendants herein as his sole heirs at law. On April 17, 1951, Bertha Ellen Koepcke, Administratrix of such estate, filed her petition for final settlement, and her discharge as such administratrix, notice thereof being published in the

Junction City Union, on April 18, April 25, and May 2, 1951. On the 4th day of May, 1951, Plaintiff filed in Probate Court of Geary County in such estate a Defense directed at the Petition for final settlement, which is still pending in such court.

"8. Plaintiff, Lena Koepcke, lived with her mother, Wilhelmina Koepcke, on the town property for several years prior to the death of Wilhelmina Koepcke, and Bertha W. Rosey, Bertha Ellen Koepcke, George Herman Koepcke, Henry Rosey, Anna M. Walker, Walter F. Koepcke, and Myrtle Venita Kirkpatrick, and Plaintiff herein all joined in the caring of Wilhelmina Koepcke during her last years during which she was an invalid."

Supplementing the foregoing factual picture it should perhaps be stated that the estate of Wilhelmina was closed on June 10, 1932, at which time the probate court in its decree of final settlement, to which no objection was made and from which no appeal was ever taken, found that under such decedent's will Lena was entitled to the specific real estate devised to her by its terms (the town property) and George was the residuary devisee and entitled to the involved farm property, provided he pay $3,000 each to Bertha, Walter and Anna; and that from and after such date, and in fact since the date of the family meeting mentioned in finding 5, heretofore quoted, Lena has been in possession of and claimed to be the owner of the town property devised to her under and by virtue of the terms of her mother's will.

On November 20, 1951, approximately twenty-nine years after final settlement of her father's estate, more than nineteen years after her mother's estate had been closed, and some six months after publication of the notice of the hearing on the petition for final settlement of the estate of her deceased brother, George Koepcke, the plaintiff, Lena Koepcke Walker, commenced this action against the defendants, who are his heirs at law, claiming to be the owner of an undivided one-fifth interest in the 340 acres of farm land in question and asking for its partition. Pleadings filed by the parties following the commencement of the action are not in question. It suffices to say they join issue on all claims made by the respective parties relating to title, ownership and right to possession of the involved property.

With issues joined as just indicated the cause was tried by the court which, after consideration of all evidence adduced by the parties, filed the heretofore quoted findings of fact and made conclusions of law favorable to claims of title advanced by the defendants. It then rendered judgment wherein it held plaintiff had

no title to the real estate involved in the action, denied all relief claimed by her in her petition with respect thereto, found defendants were the owners of such real estate, and quieted their title therein. Following rendition of such judgment and the overruling of her motion for new trial plaintiff gave the notice required to bring the cause to this court for appellate review.

The first question raised on appellate review, which appellant frankly concedes will result in an affirmance of the judgment if decided contrary to her position, is that the trial court erred in its first conclusion of law which reads:

"The will of Hans Koepcke evinces an intention to devise a fee simple estate in the real estate in controversy here to his widow, Wilhelmina Koepcke, and under that will she took an estate in fee simple."

Boiled down appellant's position on the point now being considered is that under and by virtue of the terms of his will Hans Koepcke gave his wife, Wilhelmina, a life estate only in the real estate owned by him on the date of his death and died intestate as to the remainder. On the other hand appellees take the position that by the terms of that instrument Wilhelmina was devised, and took, a fee simple title to such real estate.

From what has been heretofore related it becomes obvious that the adverse positions assumed by the parties with respect to the will in question require that it be construed and interpreted on appellate review in accord with certain existing and established principles of law, which should be stated before the will itself is considered and discussed.

The statute G. S. 1901, 7992, in force and effect on the date of the execution, as well as the admission to probate, of the will of Hans Koepcke, read:

"Every devise of real property in any will shall be construed to convey all the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to convey a less estate."

Except for minor changes in language of no consequence the foregoing statute has remained the same throughout the history of our state. The present statute G. S. 1949, 59-614, reads:

"Every devise of real estate shall pass all the estate of the testator therein, unless it clearly appears by the will that he intended a less estate to pass."

In *In re Brown*, 119 Kan. 402, 239 Pac. 747, this court held:

"In interpreting the language of a will, the law prefers a construction which will prevent a partial intestacy to one which will permit it, if such construction may reasonably be given." (Syl. ¶ 2.)

In *Hawkins v. Hansen,* 92 Kan. 73, 139 Pac. 1022, we held:

"The rules of construction applied to wills by this court in numerous cases recognize that each will must be construed by its own terms, and that where there is any ambiguity in the language the court must, as far as possible, put itself in the position of the testator, taking into consideration all the circumstances under which the will was executed, the condition of the testator's family and his estate, and from all the facts and circumstances find what his intention was. (*Safe Deposit Co. v. Stich,* 61 Kan. 474, 59 Pac. 1082; *Hurst v. Weaver,* 75 Kan. 758, 762, 90 Pac. 297.)" (Syl. ¶ 1.)

To the same effect is *In re Estate of Hauck,* 170 Kan. 116, 223 P. 2d 707, holding that:

"Where construction of a will is necessary the court must put itself in the situation of the testator when he made his will and from a consideration of the language used in the entire will determine as best it can the intention he endeavored to convey, the cardinal rule being that the intention of the testator as gathered from the whole will must control unless contrary to settled rules of law." (Syl. ¶ 3.)

See, also, *Beall v. Hardie,* 177 Kan. 353, 279 P. 2d 276, our most recent declaration respecting the paramount rule for construction of wills, where, repeating and reapproving the principle announced in the early case of *Brown v. Brown,* 101 Kan. 335, 166 Pac. 499, we held:

"A rule for the construction of wills, to which all other rules are subordinate, is that the intention of the testator, as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator." (Syl. 1.)

And in the opinion stated:

". . . In construing a will, the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*Lawrence National Bank v. Shirk,* 173 Kan. 76, 244 P. 2d 179; 5 Hatcher's Kansas Digest [Rev. Ed.], Wills, § 101; West's Kansas Digest, Wills, §§ 439, 440 and 441.)" (p. 356.)

Mindful that each will must be construed by its own terms and if ambiguous in accord with the intention of the particular individual executing the instrument we see no necessity for an extended statement of reasons responsible for the conclusions we have reached regarding the interpretation to be given the will now under consideration. It suffices to say: (1) That when we read such instrument in the light of its broken English and give careful consideration to its contents we have little difficulty in concluding ambiguity

appears upon its face; and (2) that when we place ourselves in the situation Hans was in when he made it, give consideration to all the language used therein, and keep in mind the law requires a construction which will prevent a partial intestacy to one which will permit it, if such construction can be reasonably given, we have almost as little difficulty in concluding that by its terms he intended to bequeath and devise full and complete title to all his property to his wife, Wilhelmina, with no thought that the term "During her Natguel Live", which he saw fit to include therein, would do more than imply that she could not take such property with her when the time came for her to pass to her Fathers.

To say the least the conclusions above expressed are consistent with the understanding and conduct of the testator's surviving children who, subsequent to the date of their father's death and the admission of his will to probate, stood idly by and for a period of almost half a century acquiesced in a like construction of his last will and testament, notwithstanding the many events (See the trial court's findings of fact heretofore quoted) transpiring in that interim of which they were bound to take notice.

At this point it should be stated that in construing the involved will as heretofore indicated we have not been unmindful of the one decision, *Foster v. Allen*, 159 Kan. 116, 152 P. 2d 818, on which appellant relies to sustain her position, which she insists requires a contrary construction. We have no quarrel with that decision. The trouble from her standpoint is that it is clearly distinguishable. The will there construed contained provisions, not to be found in the case at bar, which made it clearly appear the testator intended to limit his wife's interest in the real estate devised to a life estate and the opinion definitely indicates the decision is based upon that premise. Without laboring them, and conceding they too are factually distinguishable, it may be said we think there are other cases closer in point which give support to the views herein expressed. See, e. g., *Jameson v. Best*, 124 Kan. 633, 261 Pac. 582; *In re Brown*, supra; *Brown v. Brown*, supra.

For other decisions also in point and emphasizing the rule that in the interpretation of a will the construction which will prevent a partial intestacy is preferred if the language will permit it see *Pumroy v. Jenkins*, 151 Kan. 466, 99 P. 2d 752; *Whitsitt v. Mulkey*, 154 Kan. 138, 144 P. 2d 836.

Having determined that the title to the real estate in question

passed to Wilhelmina Koepcke, under the will of her deceased husband, there can be no question but what title thereto vested in her son George under the terms of her will and in his heirs at law when he died intestate. Therefore, on the basis of what has been heretofore stated, we hold that the trial court did not err in denying appellant the relief sought in her petition and in quieting the appellees' title to the real estate therein described.

The judgment is affirmed.